# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARL HALEY, | CIVIL ACTION NO. 1:17-CV-1775 |
| Plaintiff | (Chief Judge Conner) |
| v. | |
| BELL-MARK TECHNOLOGIES CORPORATION, | |
| Defendant | |

## MEMORANDUM

Before the court is the joint motion (Doc. 23) of plaintiff Earl Haley ("Haley") and defendant Bell-Mark Technologies Corporation ("Bell-Mark") for judicial approval of the parties' settlement agreement. The parties seek to resolve Haley's claims against Bell-Mark under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 PA. STAT. AND CONS. STAT. ANN. § 333.101 *et seq.*, and the Pennsylvania Wage Payment and Collection Act ("PWPCA"), 43 PA. STAT. AND CONS. STAT. ANN. § 260.1 *et. seq.* For the reasons that follow, the court will grant in part and deny in part the parties' joint motion.

I. **Factual Background & Procedural History**

Bell-Mark, a printer manufacturer, employed Haley as a field services technician from approximately June 2005 until July 17, 2015. (Doc. 1 ¶¶ 10-12). Throughout his term of employment, Haley's primary job duties included the installation and repair of Bell-Mark products. (Id. ¶ 11). According to the complaint, Haley received bi-weekly, flat rate pay, which equaled approximately

$2,036.00 per pay period. (Id. ¶ 17). Haley avers that, throughout the relevant period, he routinely worked in excess of 40 hours a week and that he made several complaints to his supervisors about Bell-Mark's failure to provide overtime compensation. (Id. ¶¶ 13-14, 19-20). On July 17, 2015, two days after Haley purportedly lodged one such complaint, Bell-Mark terminated his employment. (See id. ¶¶ 21-23, 25; Doc. 8 ¶ 23).

Haley commenced this action by filing a three-count complaint on October 2, 2017, asserting violations of the FLSA, the PMWA, and the PWPCA. Bell-Mark filed an answer on December 4, 2017, denying each of Haley's claims. After conducting informal discovery and participating in a court-ordered mediation session, the parties continued negotiations and arrived at a confidential settlement and release agreement ("proposed settlement"). Haley and Bell-Mark filed the instant joint motion on January 14, 2019, seeking judicial approval of their proposed settlement.

## II. Legal Standard

Congress enacted the FLSA for the purpose of "protect[ing] all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a). The statute was designed to ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." Barrentine, 450 U.S. at 739 (alteration in original) (internal citations and quotations omitted). To safeguard employee rights made mandatory by statute, a majority of courts have held that *bona fide* FLSA

disputes may be settled or compromised only through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit.¹

The Third Circuit has not addressed whether FLSA actions claiming unpaid wages may be settled privately prior to obtaining judicial approval. Absent such guidance, district courts within the Third Circuit have routinely adopted the majority position and have required judicial approval as a precondition to amicable resolution of claims.² Courts typically employ the considerations set forth by the Eleventh Circuit in Lynn's Food Stores, 679 F.2d 1350, when evaluating proposed FLSA settlement agreements. See, e.g., Kraus, 155 F. Supp. 3d 516; McGee, 2014 WL 2514582; Brown, 2013 WL 5408575; Deitz, 2013 WL 2338496; Altenbach, 2013 WL 74251; Cuttic, 868 F. Supp. 2d 464; Brumley, 2012 WL 1019337; Morales, 2012 WL 870752.

---

¹ See, e.g., Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1354-55 (11th Cir. 1982); Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015); Copeland v. ABB, Inc., 521 F.3d 1010, 1014 (8th Cir. 2008); Taylor v. Progress Energy, Inc., 493 F.3d 454, 460, 462 (4th Cir. 2007), superseded by regulation on other grounds as recognized by Whiting v. The Johns Hopkins Hosp., 416 F. App'x 312, 316 (4th Cir. 2011); Walton v. United Consumers Club, Inc., 786 F.2d 303, 305-07 (7th Cir. 1986); but see Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 256 (5th Cir. 2012).

² See, e.g., Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516 (E.D. Pa. 2016); McGee v. Ann's Choice, No. 12-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014); Brown v. TrueBlue, Inc., No. 1:10-CV-514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013); Deitz v. Budget Renovations & Roofing, Inc., No. 4:12-CV-718, 2013 WL 2338496 (M.D. Pa. May 29, 2013); Altenbach v. Lube Ctr., No. 1:08-CV-2178, 2013 WL 74251 (M.D. Pa. Jan. 4, 2013); Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464 (E.D. Pa. 2012); Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2016); Morales v. PepsiCo, Inc., No. 11-6275, 2012 WL 870752 (D.N.J. Mar. 14, 2012).

Under Lynn's Food Stores, a proposed compromise may satisfy judicial review if it is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355 (emphasis added). When a reviewing court is satisfied that the agreement in fact resolves a *bona fide* dispute, it proceeds in two phases: first, the court assesses whether the parties' agreement is fair and reasonable to the plaintiff employee; and second, it determines whether the settlement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace. Kraus, 155 F. Supp 3d at 523; see McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *1; Altenbach, 2013 WL 74251, at *1.

### III. Discussion

The court will consider *seriatim* the terms of the proposed settlement, the nature of the parties' dispute, and the fairness and reasonableness of the comprise as to Haley and as measured against the intent of the FLSA. See Lynn's Food Stores, 679 F.2d at 1355.

#### A. Terms of Proposed Settlement

Under the terms of the proposed settlement, Bell-Mark agrees to pay $25,000.00 to resolve Haley's claims. (See Doc. 23, Ex. A ¶ 2). Haley will receive $14,422.47 of the total settlement amount, and his counsel will receive $10,577.53 in attorney's fees and costs. (See id. ¶¶ 2(a)-(c); Doc. 23 at 5). In exchange for payment thereunder, the proposed settlement contains the following release, confidentiality, and non-disparagement clauses:

> 7. RELEASE. Employee hereby irrevocably and unconditionally releases and forever discharges the Released Parties and all persons acting by, through,

4

under, or in concert with any of them from all claims asserted in the Lawsuit, as well as any and all claims, liabilities, actions, demands, obligations, agreements, or proceedings of any kind, individually or as part of a group action, whether known or unknown, arising out of or relating to Employee's employment or the termination of her [sic] employment, including, but not limited to, all matters in law, in equity, in contract, or in tort, or pursuant to statute, including damages, attorney's fees, costs and expenses, to the fullest extent permitted by governing law, including without limitation, claims arising under the Fair Labor Standards Act, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania Minimum Wage Act, the Pennsylvania Whistleblower Law, the public policy exception to the employment at will doctrine, the Age Discrimination in Employment Act, the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Employee Retirement Income Security Act, the Americans with Disabilities Act, the National Labor Relations Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, or any other federal, state, or local law, statute, or ordinance to the fullest extent permitted by governing law.

. . .

9.  NONDISCLOSURE.

   a.  Employee agrees that he has kept the terms of the negotiation of this Agreement completely confidential, with the exception of consulting with attorneys, tax advisors and immediate family members who have been informed of the need to keep it strictly confidential.

   b.  Employee further agrees that he will not hereinafter disclose the terms of this Agreement (in particular, the Consideration provided in Paragraph 2), or the fact of its existence or execution, to anyone, except that Employee may disclose the terms to her [sic] attorneys, accountants, or immediate family members. Such individuals shall be informed of the duty to keep the terms confidential pursuant to this paragraph. Otherwise, if asked about this matter, Employee may <u>only</u> respond that: "It has been resolved, and I cannot discuss

it," or words to that effect. Should Employee receive a subpoena or order of a court reasonably believed to be a court of proper jurisdiction seeking the disclosure of the terms of this Agreement, Employee shall give the Company notice of any such order or subpoena by forwarding the same within three business days to Dale Miller.

c. Employee acknowledges that this nondisclosure provision is a material part of the inducement for the Company to enter into this Agreement. Employee further agrees that the time and expense involved in proving in any forum the actual damage or loss suffered by breach of this nondisclosure provision makes such a case appropriate for liquidated damages. Accordingly, instead of requiring any proof of actual damages or losses, Employee agrees to pay the Company the sum of Five Thousand Dollars and No Cents ($5,000.00) for each breach of this Nondisclosure provision (but not as a penalty) upon a finding by a Court of such a breach. Neither the breach of this nondisclosure provision nor the payment of liquidated damages shall affect the continuing validity or enforceability of this Agreement. Employee agrees to indemnify the Company for any attorneys' fees and costs incurred if it is the prevailing party in any action enforcing this provision.

10. <u>NON-DISPARAGEMENT</u>. Employee agrees to make no public or private statements that are disparaging of the Company, except that he may furnish factually accurate information requested by any federal, state, or local governmental entity or pursuant to subpoena. Employee shall direct any requests for verification of employment only to Dale Miller, who will provide dates of employment, position held and salary if authorized. No other information will be provided.

(Doc. 23, Ex. A ¶¶ 7, 9-10).

### B. *Bona Fide* Dispute

The court first addresses the threshold question of whether the proposed settlement resolves a *bona fide* dispute between the parties. Haley alleges that Bell-

Mark willfully, intentionally, and maliciously violated state and federal law. (See Doc. 1 ¶¶ 32, 37, 43). Haley avers that Bell-Mark knew he frequently worked more than 40 hours a week and yet failed to compensate him at a rate of one and one-half times his regular pay as required by the FLSA. (See id. ¶¶ 13-15, 29-32; Doc. 23 at 4). Haley further asserts that Bell-Mark violated the FLSA by terminating Haley's employment in close temporal proximity to his complaints about nonpayment of overtime wages. (See Doc. 1 ¶¶ 21-25, 33-36; Doc. 23 at 4-5).

Bell-Mark denies these allegations and raises 15 affirmative and additional defenses in its answer. (Doc. 10 at 10-11). Specifically, Bell-Mark rejects that Haley worked over 40 hours in any given week during the relevant period, contends that Haley—a salaried employee—was exempt from receiving overtime pay, and asserts that Bell-Mark terminated Haley solely because of job performance issues. (Id. ¶¶ 13, 15-17, 24-25, 34-35). The parties proceeded to conduct informal discovery and mediation, ultimately reaching the proposed settlement presently under review. (Doc. 23 at 3).

A *bona fide* dispute exists when parties genuinely disagree about the merits of an FLSA claim—when there is factual rather than legal doubt about whether the plaintiff would succeed at trial. See Lynn's Food Stores, 679 F.2d at 1354; Kraus, 155 F. Supp. 3d at 530; Deitz, 2013 WL 2338496, at *3. Therefore, an agreement settling FLSA claims must not amount to a "mere waiver of [an employee's] statutory rights," but rather must "reflect a reasonable compromise" of genuinely disputed factual issues. Lynn's Food Stores, 679 F.2d at 1354.

In the case *sub judice*, the factual record clearly depicts the existence of a *bona fide* dispute. The parties genuinely disagree as to whether Haley in fact worked over 40 hours in any given week during the relevant period. (Doc. 1 ¶¶ 13-14; Doc. 10 ¶¶ 13-14). A genuine dispute also exists regarding the reasons for Haley's termination. Haley contends that his termination was in retaliation for seeking overtime pay. (Doc. 1 ¶¶ 33-36; Doc. 23 at 4-5). Bell-Mark responds that Haley did not complain to company supervisors about nonpayment of overtime wages and proffers that Bell-Mark had legitimate, performance-related reasons for terminating Haley. (See Doc. 10 ¶¶ 14, 19-20, 22-23, 33-36; Doc. 23 at 5). The court therefore concludes that the proposed settlement resolves a *bona fide* dispute between the parties.

### C. Fair and Reasonable Settlement

The court must next determine whether the parties' proposed settlement represents a fair and reasonable compromise of Haley's claims against Bell-Mark. In undertaking this analysis, district courts within the Third Circuit have considered the factors set forth in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), which established evaluative criteria for measuring the fairness of proposed class action settlements. See, e.g., McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *2; Deitz, 2013 WL 2338496, at *5-8; Altenbach, 2013 WL 74251, at *2; Brumley, 2012 WL 1019337, at *4-5. Girsh directs courts to examine the following nine factors:

> (1) the complexity, expense[,] and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

> discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 156-57 (citation omitted). Some of the Girsh factors are of "little help, if not irrelevant in the single-plaintiff context." Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). Consequently, courts need not apply the Girsh factors mechanically. Id. (quoting Kraus, 155 F. Supp. 3d at 523 n.3). Applying the appropriate factors, the court concludes that the parties' proposed settlement constitutes a fair and reasonable compromise of Haley's claims.

The parties acknowledge in their joint motion that, in light of Bell-Mark's continued denial of liability, Haley is likely to face difficulties in satisfying the but-for standard required to prove FLSA retaliation. (See Doc. 23 at 5). The court finds that the parties gained an adequate appreciation for the merits of Haley's claims: they conducted informal discovery, participated in a productive mediation session, and engaged in additional negotiations thereafter. See Deitz, 2013 WL 2338496, at *6. The proposed settlement provides Haley with sufficiently reasonable compensation. The $25,000.00 settlement, which the parties agreed to after several settlement talks where both Haley and Bell-Mark were represented by counsel, amounts to approximately 47% of the $52,744.00 salary Haley received during his last full year of employment. (See Doc. 23 at 5). Given that the record is silent regarding an estimate of the actual number of overtime hours that Haley clocked

9

during the relevant period, the agreed-upon sum of $25,000.00 is reasonable compensation for Haley's disputed wage and retaliation claims. Cf. Howard, 197 F. Supp. 3d at 778. Weighing all of the applicable Girsh factors, we find that the proposed settlement presents a fair and reasonable resolution of Haley's claims.

### D. Furtherance of the FLSA

The court must also determine whether the proposed settlement furthers or frustrates implementation of the FLSA in the workplace. See McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *1. This inquiry requires consideration of three interrelated FLSA objectives: (1) combatting "inequalities in bargaining power between employers and employees," Lynn's Food Stores, 679 F.2d at 1352 (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945)); (2) ensuring widespread employer compliance with the FLSA, McGee, 2014 WL 2514582, at *3 (citing Brumley, 2012 WL 1019337, at *7); and (3) honoring the "private-public character of employee rights," whereby the public has a general interest in employee well-being and access to fair wages, see Cuttic, 868 F. Supp. 2d at 467; Brown, 2013 WL 5408575, at *3 n.2 (citation omitted); Altenbach, 2013 WL 74251, at *3 (same). Courts assess a settlement's consonance with these FLSA objectives by considering, *inter alia*, the scope of any confidentiality provisions, see, e.g., McGee, 2014 WL 2514582, at *3; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *2-3, and the breadth of any release of claims provisions, see, e.g., Giannattasio v. Excellent Pancake, Inc., No. 18-CV-176, 2018 WL 3913109, at *2-3 (E.D. Pa. Aug. 15, 2018); Bettger v. Crossmark, Inc., No. 1:13-CV-2030, 2015 WL 279754, at *8-10 (M.D. Pa. Jan. 22, 2015) (Conner, C.J.). Having

carefully considered the terms of the proposed settlement, the court finds that the overly broad confidentiality and release clauses are antithetical to the FLSA and therefore must be excluded. (See Doc. 23, Ex. A ¶¶ 7, 9).

### 1. *Confidentiality Clause*

There is a strong presumption against confidentiality clauses in FLSA wage-settlement agreements. Waltz v. Aveda Transp. & Energy Servs. Inc., No. 4:16-CV-469, 2017 WL 2907217, at *3 (M.D. Pa. July 7, 2017); Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL 300583, at *3 (D.N.J. Feb 1, 2012) (collecting cases). Compelled silence frustrates implementation of the rights granted by the FLSA and restricts the public's access to and knowledge of the disputed FLSA violation. See, e.g., McGee, 2014 WL 2514582, at *3; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *2-3.

The proposed settlement agreement, which has been submitted to this court under seal, contains a broad confidentiality clause prohibiting Haley from disclosing the agreement's terms to any person except his attorneys, accountants, or immediate family members. (See Doc. 23, Ex. A ¶ 9(b)). The confidentiality clause dictates the precise response that Haley must give if he is asked about the proposed settlement and establishes a penalty of $5,000.00 for each proven breach of the confidentiality requirements. (Id. ¶¶ 9(b), 9(c)). The clause also prescribes steps for Haley to follow if he receives a subpoena or court order seeking disclosure of the terms of the proposed settlement, *viz.*, Haley must give Bell-Mark notice of the subpoena or court order within three business days. (Id. ¶ 9(b)).

District courts within the Third Circuit have occasionally approved narrowly crafted confidentiality clauses. See, e.g., McGee, 2014 WL 2514582, at *3; In re Chickie's & Pete's Wage & Hour Litig., No. 12-6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014). In each instance, however, the at-issue clause restricted employees only from disparaging their employers and discussing the terms of the settlement with the press and media. McGee, 2014 WL 2514582, at *3; In re Chickie's & Pete's, 2014 WL 911718, at *3. The courts emphasized that the confidentiality clauses furthered implementation of the FLSA by maintaining public access to the settlements and allowing the employees to discuss the terms with fellow co-workers. McGee, 2014 WL 2514582, at *3; In re Chickie's & Pete's, 2014 WL 911718, at *3.

The instant confidentiality clause is neither a narrow bar against disparagement nor a mere restriction on Haley's ability to communicate with the media. Rather, the clause is a broad imposition of confidentiality requirements which effectively mandate Haley's total silence. By limiting public access to the settlement agreement and prohibiting Haley from discussing its terms with his former coworkers, the confidentiality clause frustrates the FLSA objective of widespread employer compliance and thwarts the private-public character of FLSA employee rights. See Altenbach, 2013 WL 74251, at *2-3; Brumley, 2012 WL 1019337, at *6-7; cf. McGee, 2014 WL 2514582, at *3. Additionally, the confidentiality clause creates profound inequality in bargaining power between the parties by allowing Bell-Mark to penalize and retaliate against Haley for future violations of the clause's terms. See Altenbach, 2013 WL 74251, at *3; Brumley, 2012 WL

1019337, at *7. Therefore, the confidentiality clause impermissibly frustrates implementation of the FLSA and the court cannot approve it.

Courts reviewing proposed FLSA settlement agreements also express a "strong presumption in favor of keeping settlement agreements . . . unsealed and available for public view." Cuttic, 868 F. Supp. 2d at 467 (collecting cases). In their joint motion, the parties emphasize the materiality of the proposed settlement's confidentiality provisions and reiterate their interest in keeping the settlement under seal. (See Doc. 23 at 1-2). Earlier in the proceedings, this court granted Bell-Mark's unopposed motion for leave to file documents under seal. (Doc. 22). However, because the *permanent* sealing of FLSA settlements contravenes the FLSA objectives discussed *supra*, the court will decline to seal the parties' final, revised settlement agreement.

### 2. *Release of Claims Provision*

District courts reviewing proposed FLSA settlements frequently require litigants to limit the scope of waiver and release provisions to "claims related to the specific litigation." Singleton v. First Student Mgmt. LLC, No. 13-1744, 2014 WL 3865853, at *8-9 (D.N.J. Aug. 6, 2014); see also Giannattasio, 2018 WL 3913109, at *2-3; Kraus, 155 F. Supp. 3d at 532-33; Bettger, 2015 WL 279754, at *8-10 (collecting cases). Courts must closely examine FLSA settlements containing "pervasive" release provisions that "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." Brumley, 2012 WL 1019337, at *8 (citation omitted). Provisions requiring employees to generally release and waive all future claims against employers contravene the FLSA objective of maintaining equal

13

bargaining power between employers and employees, thereby "impermissibly frustrate[ing] the implementation of an otherwise fair and reasonable settlement." Kraus, 155 F. Supp. 3d at 533 (citing Bettger, 2015 WL 279754, at *9); see also Giannattasio, 2018 WL 3913109, at *2 (citation omitted); Brumley, 2012 WL 1019337, at *8.

In relevant part, the release clause included in the proposed settlement requires Haley to:

> irrevocably and unconditionally release[] and forever discharge[] the Released Parties . . . from all claims asserted in the Lawsuit, as well as any and all claims . . . whether known or unknown, arising out of or relating to [Haley's] employment or the termination of [his] employment, including, but not limited to, all matters in law, in equity, in contract, or in tort, or pursuant to statute . . . including . . . claims arising under the Fair Labor Standards Act, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania Minimum Wage Act, the Pennsylvania Whistle Blower Law, the public policy exception to the employment at will doctrine, the Age Discrimination in Employment Act, the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Employee Retirement Income Security Act, the Americans with Disabilities Act, the National Labor Relations Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, or any other federal, state, or local law, statute, or ordinance . . . .

(Doc. 23, Ex. A ¶ 7). We find the sweeping breadth of the proposed settlement's release clause inappropriately comprehensive. The release clause precludes Haley from raising any and all claims—both known and unknown—under federal, state, and local law, including claims that are unrelated to the overtime pay and alleged retaliation at issue in this case. The release clause extends far beyond the pale of

the FLSA claim.  See Brumley, 2012 WL 1019337, at *8.  Tasked with ensuring that implementation of the FLSA is furthered, not frustrated, by the parties' proposed settlement, the court cannot approve the release clause in its present form.  We approve only the provisions releasing Bell-Mark from claims that both fall within the ambit of the FLSA and related Pennsylvania statutes and common law and arise from the alleged facts of the instant litigation.

## IV. Conclusion

The court will grant in part and deny in part the parties' joint motion (Doc. 23) for judicial approval of the proposed settlement and will grant the parties an opportunity to remedy the concerns identified herein.  An appropriate order will issue.

       /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    April 30, 2019